# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

ANA LISA RICKS,
:
    Petitioner,                                  Case No. 3:11-cv-240

:               District Judge Walter Herbert Rice
  -vs-                                      Magistrate Judge Michael R. Merz

GININE TRIM, Warden,
 Ohio Reformatory for Women,
:
    Respondent.

## REPORT AND RECOMMENDATIONS

This is a habeas corpus case brought *pro se* by Petitioner Ana Ricks to obtain release from the sentence she is serving in Respondent's custody upon her 1982 conviction for felonious assault in the Montgomery County Common Pleas Court.

The Petition, filed in this Court July 14, 2011,[1] pleads the following grounds for relief:

> **Ground One**: 14th Amendment Due Process
>
> **Supporting Facts:** The State of Ohio waited over 20 years to notify me of the results of my appeal (1983) and convey me to prison in which affirmation of conviction curtailed. The State has no substantial or valid reason for this excessive delay. The authorities had released me from custody subsequently freeing me from further responsibilities. The State did not use reasonable diligence to apprehend me after the fact. The State has not been reasonable and/or consistent. It has not been fair in its legal proceedings. The omittence [sic] of substantial and procedural due process has caused a manifest miscarriage of justice and has become

---

1 The Petition was purportedly signed on July 7, 2011. If the difference were material, Petitioner would be entitled to the date of signing under the "mailbox rule."

vindictive. The State has lost jurisdiction over me and it is unconstitutional to further incarcerate me.

**Ground Two:** 6th Amendment. 1) Effective Assistance of Counsel 2) Right to a Speedy Trial

**Supporting Facts:** The attorney active on my case at the time of trial failed to do what the law required regarding the determination of my appeal subsequently delaying conveyance to prison and possibly taking my case to a higher court. Due to the excessive delay to execute sentence, post-conviction was thwarted and consequently I was barred from the courts because of the constraints in filing petitions, motions, etc.

**Ground Three:** 5th Amendment Double Jeopardy
A) Justice should be administered without delay and not without due process.
B) Multiple punishments for the same offense after conviction.
C) Self incrimination.

**Supporting Facts:** An excessive delay in execution of sentence, without justification, has caused prejudice in my case. Authorities did not use due diligence in apprehending me to convey me to prison in a timely manner. Due process has been omitted by a procedural default by the State and now some circumstances according to the State has changed the aspect of facts about my original conviction. The State has re-sentenced me under new laws without a fair hearing. Authorities want me to make statements regarding my case to determine my release. I have not been barred from litigation on my conviction. To make any statements may be self-incriminating.

**Ground Four:** Ohio Constitution, Art. 1 [§] 10 Unjustified Delay.

**Supporting Facts:** The unjustified delay in conveying me to prison to serve a sentence handed down over 20 years ago, at no fault of my own, has caused a manifest miscarriage of justice, denying me due process. The State offers no substantive or valid reason for this excessive delay. This is contrary to law and shocks the conscience of citizens who depend on the laws to follow. The effect of delay has caused me prejudice and has become vindictive. The sentencing court has lost jurisdiction over me because of the excessive delay in conveying me to prison.

(Petition, Doc. No. 4, PageID 36-41.)

## Procedural History

Defendant was indicted on April 16, 1981, by the Montgomery County Grand Jury on a charge that she committed felonious assault by shooting James Bernton, Jr., in the head on April 4, 1981 (Indictment, Return of Writ, Ex. 2, PageID 137.) Defendant was arraigned before The Honorable Carl D. Kessler on May 7, 1981 (Return of Writ, PageID 139). When the case was called for trial on September 2, 1981, the State requested a continuance because the victim was still in a nursing home and unable to attend. Defendant's counsel, Thomas Liles, made no objection and Judge Yeazel reset the trial for December 9, 1981. *Id.* at 140-41. On December 9, 1981, the State moved for a further continuance because Mr. Benton was expected to die and an unnamed eyewitness was thought to be hospitalized in California; Judge Kessler granted the continuance for one week. *Id.* at PageID 143. Judge Yeazel then entered a formal continuance entry based on the same facts which re-set the trial to February 9, 1982. *Id.* at PageID 145.

On March 2, 1982, defense counsel moved for a continuance and the case was re-set to March 29, 1982. *Id.* at PageID 146. Then on March 12, 1982, Mr. Liles moved for dismissal under Ohio's speedy trial act, Ohio R. Code § 2945.71. *Id.* at PageID 147-148. Judge Yeazel overruled the motion. *Id.* at PageID 149-150. The case was then tried to a jury which returned a verdict of guilty as charged on April 1, 1982. *Id.* at PageID 152-153. On April 6, 1982, Judge Yeazel sentenced Petitioner to an indefinite term of imprisonment of two to fifteen years. *Id.* at PageID 153(Termination Entry). On the same day, Judge Yeazel approved an appeal bond of $5,000 cash or surety. *Id.* at PageID 154. Mr. Liles then moved for judgment of acquittal or a

new trial. *Id.* at PageID 157-160. Judge Yeazel overruled the motion. *Id.* at PageID 161. Mr. Liles then filed a Notice of Appeal. *Id.* at PageID 162.

On September 16, 1982, Judge Yeazel modified the appeal bond to a personal recognizance bond. *Id.* at PageID 164. On appeal, Mr. Liles raised as assignments of error the asserted speedy trial violation, the admission in evidence of a purported incriminatory conversation of Petitioner with Gertrude Winton, admission of gruesome photographs of the victim's injuries, and insufficiency of the evidence. *Id.* at PageID 169.

The Montgomery County Court of Appeals, Judges Kerns, Wilson, and Weber concurring, affirmed the conviction. *State v. Ricks*, 1983 Ohio App. LEXIS 16047 (Ohio App. 2nd Dist. May 3, 1983). The court's Journal Entry shows that a copy was mailed to Mr. Liles (Return of Writ, Doc. No. 8, PageID 222). The appearance docket of the Court of Appeals shows that Mr. Liles made application for his attorney fees on June 8, 2003, supporting the inference that he received the court's decision. *Id.* at PageID 342. A month later the same docket shows return of the original papers to the Common Pleas Court. *Id.* The Common Pleas docket shows receipt of the original papers from the court of appeals on the same date. *Id.* at 337.

Sometime between 1983 and 2007, the Montgomery County Clerk of Courts, who is the Clerk for both the Common Pleas Court and Court of Appeals, switched from a handwritten docket to an electronic docket. The next entry on the docket for Ms. Ricks' case is on January 22, 2007,[2] when Judge Gorman's Entry and Order to execute the sentence was docketed along with the Clerk's Capias Warrant to carry that order into effect. (Entry, Order, and Capias Warrant: Return of Writ, Ex. 23, PageID 223; docket entry at PageID 340.) The Sheriff's office made a return of

---

2 The Magistrate Judge attributes the date "January 17, 2006" in Judge Gorman's Order to the not uncommon mistake of failing to adjust to the new year for several weeks after it begins. In context, this appears to be a typographical error.

the capias warrant on January 27, 2007 (Return of Writ, Doc. No. 8, PageID 224). A warrant to convey Petitioner to the Women's Reformatory was issued by the Clerk on February 7, 2007. *Id.* at PageID 225.

About six months later on August 29, 2007, Petitioner filed a Motion to Suspend Further Execution of Sentence under Ohio Rev. Code § 2947.061, the statute which provides for shock probation (Return of Writ, Ex. 26, PageID 228-232). There is no indication in the record of a ruling on this Motion, although the State opposed it.

Petitioner next file a Petition for Writ of Mandamus in the Ohio Supreme Court in April, 2010 (Return of Writ, Doc. No. 8, Ex. 28, PageID 237-261). She cites state case law and 76 ALR 5th 485 in support of her demand that the Ohio Supreme Court order the Montgomery County Common Pleas Court to "vacate her sentence." (Petition for Mandamus, Return of Writ at PageID 250). The Montgomery County Prosecutor moved to dismiss the petition on two formal grounds and because habeas corpus is the proper Ohio remedy for someone seeking release from prison, rather than mandamus. The Second District Court of Appeals, also named as a respondent, filed a separate motion to dismiss. In a summary entry, the Ohio Supreme Court granted both motions on June 23, 2010(Entry, Return of Writ, Doc. No. 8, Ex. 31, PageID 275).

Petitioner next filed a petition for writ of habeas corpus in the Ohio Supreme Court on January 31, 2011 (Petition, Return of Writ, PageID 276-329). So far as the record shows, no state entity wrote in response to her Petition, although it was purportedly served on the Montgomery County Prosecutor, but the Ohio Supreme Court dismissed it *sua sponte* on March 26, 2011 (Entry in Case No. 2011-0184, copy at Return of Writ, PageID 330). Petitioner essentially asked the Ohio Supreme Court to explain itself in a Motion for Clarity of Dismissal, but the Court denied the Motion without offering any explanation either of the dismissal of the habeas petition or its denial

of the Motion for Clarity (Entry in Case No. 2011-0184, copy at Return of Writ, PageID 335). Petitioner then filed in this Court.

**Respondent's Position**

On Magistrate Judge Ovington's Order (Doc. No. 7), Respondent Warden has filed a Return of Writ (Doc. No. 8).[3] The Warden raises the following affirmative defenses:

1. The Petition is barred by the one year statute of limitations in 28 U.S.C. § 2254(d(1)(Return, Doc. No. 8, at PageID 93-104)

2. Petitioner's Fourth Ground for Relief under the Ohio Constitution is not cognizable in federal habeas corpus. *Id.* at PageID 104-106,

3. Petitioner has not exhausted her available state court remedy of delayed direct appeal to the Ohio Supreme Court for claims which were presented on direct appeal. In the alternative, if this Court finds it is unlikely the Ohio Supreme Court would find good cause for the delay,[4] then the Court should find the direct appeal claims are procedurally defaulted. *Id.* at PageID 106-115.

4. Petitioner did not fairly present her claims to the Ohio Supreme Court as federal constitutional claims and thus has procedurally defaulted them (Return, Doc. No. 8, PageID 114-116.

Respondent also argues in the alternative on the merits of the first three Grounds for Relief.

---

3 The Return is forty-four pages along. It exceeds the *prima facie* twenty-page limit provided by S. D. Ohio Civ. R. 7.2(a)(3), but was filed without permission to exceed the limit and without the required summary.
4 Petitioner admitted in her state habeas petition that "[a] delayed appeal is obviously unattainable due to time constraints." PageID 299.

*Id.* at PageID 121-129.

## Analysis

## Claims Relating to Original Conviction

It is unclear from her pleadings to what extent Ms. Ricks is attempting at this point to set aside her original conviction. However, any such claims are now certainly barred by the statute of limitations and by Ms. Ricks' procedural default in presenting such claims to the Ohio Supreme Court.

The only claim made on direct appeal which is similar in wording to any of those raised in the Petition here is the speedy trial claim. On examination of the content of those claims in the two proceedings, they are completely different. The Sixth Amendment to the Constitution guarantees criminal defendant a speedy trial and the Ohio General Assembly enforced that right by adopting Ohio Rev. Code § 2945.71, which sets very specific time limits. On direct appeal through Mr. Liles, Ms. Ricks claimed that her speedy **trial** right under both Ohio and constitutional law had been violated by the delay in bringing her to trial. It appears to the Court that Ms. Ricks is using the words "speedy trial" in this proceeding to claim a right to prompt execution of sentence, not a right to be promptly tried.

But if Ms. Ricks is in any way attempting to raise the speedy trial issue properly so called, she can no longer do so. After the Anti-Terrorism and Effective Death Penalty acted was enacted on April 25, 1996, she had until one year later to bring a habeas corpus action challenging her conviction on that basis. *Brown v. O'Dea,* 183 F.3d 572 (6th Cir. 1999). She did not file the Petition here until more than fourteen years after the statute ran. She offers the excuse that she

could not file because she was not incarcerated, but she was free on an appeal bond, and such a person is sufficiently in custody to bring habeas corpus. *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294 (1984); *Hensley v. Municipal Court,* 411 U.S. 345 (1973); *Lawrence v. 48th District Court*, 560 F.3d 475, (6th Cir. 2009); *McVeigh v. Smith*, 872 F.2d 725, 727 (6th Cir. 1989). The Court assumes the truth of Ms. Ricks' assertion that her lawyer did not tell her about the Court of Appeals decision, although the Court of Appeals did docket its decision and send a copy to Mr. Liles. That would excuse some delay in filing, but certainly not the fourteen years up to April, 1997.

In the alternative, all claims made on direct appeal but not pursued to the Ohio Supreme Court and now brought to challenge the original conviction are barred by procedural default in not presenting them to that court. Ms. Ricks is certainly correct in assuming the Ohio Supreme Court would not find good cause for her delay and allow her a delayed appeal at this point in time.

Ms. Hicks suggests that she can excuse her delay by a claim of actual innocence and points to the testimony of Detective Jack Lipker regarding missing witness Jean Castillo. It appears to be true that Ms. Castillo would have interesting testimony to offer since she was in the car when Mr. Benton was shot and told Lipker that a male did it, instead of her daughter, the Petitioner. But there is no showing of what Ms. Castillo would actually testify to and no reason to classify what she might have to say now as newly discovered. Ms. Castillo apparently left Ohio before the trial and could not have been subpoenaed, but Ms. Ricks makes no showing of diligence on her part to find out what her mother would say or whether she is willing to return to Ohio to testify.

The threshold inquiry on an actual innocence claim is whether "**new** facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Schlup v. Delo*, 513 U.S. 298, 317 (1995)(emphasis added)." "To be credible, such a claim requires

petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324.

Because Ms. Ricks failed to file by the April 24, 1997, deadline under the AEDPA for claims related to her original conviction, those claims are barred and should be dismissed with prejudice.

**Claims Relating to Delay in Execution of Sentence**

The real gravamen of Petitioner's claim is that it was unconstitutional to execute the sentence in 2007 when the State had done nothing to convey her to prison for, at that point, twenty-four years.

This claim fits within our habeas jurisdiction because it is a claim that a person convicted within the jurisdiction of this Court is confined in violation of the United States Constitution, except for Ground Four, which claims incarceration in violation of the Ohio Constitution. Ground Four is not cognizable in federal habeas corpus and should be dismissed without prejudice. 28 U.S.C. §2254(a); *Wilson v. Corcoran,* 562 U.S. ___, 131 S. Ct. 13; 178 L. Ed. 2d 276 (2010)*;Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).

That claim arose for purposes of the statute of limitations when Ms. Ricks' was arrested on Judge Gorman's January 2007 arrest warrant. That is to say, Ms. Ricks did not know until 2007 that the State would execute on its judgment and thus she had no claim about delay in execution until then. As a matter of lenience, the Magistrate Judge calculates that date as February 12,

2007, the date Ms. Ricks was received at Marysville (Notice of Commitment, Ex. 25 to Return of Writ, PageID 25). Petitioner had one year from that date to file a federal habeas petition; the year would have expired February 13, 2008, unless tolled.

Under 28 U.S.C. § 2244(d)(2), the statute of limitations is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." Petitioner first post-confinement filing was for shock probation on August 24, 2007, but such a motion is not a collateral attack on the judgment. Instead of making a claim that the judgment is unlawful, it is directed to the trial court's discretion. There is serious question whether the motion could have been granted, since the authorizing statute was repealed as of July 1, 1996, and was always unavailable to a offender who used a firearm. Because it is not a collateral attack on the judgment, a motion for shock probation does not toll the federal statute of limitations.5

The very next thing Ms. Ricks filed was her petition for writ of mandamus in the Ohio Supreme Court in March, 2010, more than two and one-half years later. Under Ohio law, as Ms. Ricks later found out, the relief she was seeking was more properly sought in state habeas corpus. Even assuming this Court treats the petition for mandamus as a proper collateral attack on the judgment, the statutory deadline had already expired by more than two years when the petition for mandamus was filed. Filing a collateral attack merely tolls the federal statute of limitations; it does not re-start it.

---

5 Alternatively, a motion for shock probation not ruled on for thirty days is deemed denied and no final appealable order exists, so even construing the motion as a collateral attack, it only tolled the statute for thirty days.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice as barred by the statute of limitations. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and this Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

June 18, 2012.

s/ **Michael R. Merz**
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).